OPINION OF THE COURT
Harry W. Davis, J.
Defendant by written motion challenges the jury panel from which prospective jurors will be drawn, upon the ground that there has been a systematic exclusion of Asian-American citizens from such panel. On oral argument, the motion was amended to include a challenge to the array. There has been lengthy testimony taken, including that of the New York County Clerk, Norman Goodman. A large number of statistical exhibits, dealing with the census of 1970 and purported population distribution, have been introduced or otherwise made available to the court. -
Article 17 of the Judiciary Law prescribes among other things the methods to be employed in obtaining pools of qualified jurors. Section 594 sets forth the lists which the county clerk may consult for the purpose of ascertaining names of persons eligible to serve as jurors. The voters’ registry list, one of those authorized to be so used in this section, has been the sole source of creating a pool of approximately 135,000 persons since the early part of the 20th century. There are now between 2,000 and 3,000 additional names being added each month. A list not previously used, but now in use since May 1, 1976, is the New York City income tax mailing list. While this list has brought in additional persons, many are ineligible to serve since they lack the qualifications prescribed by section 596.
The 1970 census records would appear to indicate that 48,412 Asian-Americans reside in New York County. This constitutes 3.13% of the total population of New York County. After removing the ineligibles, it is estimated by defendant that 25,508 Asian-Americans in New York County meet the threshold legal requirements for jury service. This would be equivalent roughly to 1.6% of the total population in New *206 York County. Mr. Goodman testified that out of 2,500 persons recently found qualified for jury service, 37 were Orientals. That would be equal to 1.5% of the total qualified. This closely jibes with defendant’s statistics.
The issue here is not whether the composition of a jury must be a mathematical ratio to the makeup of the population in the community. Indeed this principle has been found wanting and has been uniformly rejected by our courts. In Taylor v Louisiana (419 US 522, 538) it was held "we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.” The rule to be applied is "whether the complainant has submitted proof sufficient to establish the existence of intentional and systematic discrimination in the jury selection process.” (People v Parks, 41 NY2d 36, 43.)
Upon oral argument, defendant did not urge intentional systematic exclusion of Asian-Americans but claimed inadvertent systematic exclusion. Inadvertent is described as meaning "not attentive, or unintentional.” In his brief he now urges, however, that the use of voter registration lists results in the systematic exclusion of Asian-Americans and thus creates a "presumption of intentional discrimination.” Neither the Constitution nor the Judiciary Law prescribes with meticulous detail the manner in which the pool of jurors must be selected. "While a criminal defendant * * * has a constitutional right * * * to be tried by a jury that is truly representative of the community * * * the States have a wide discretion in formulating procedures for the selection of juries” (People v Parks, supra, p 42) and the source must reasonably reflect " 'a cross-section of the population suitable in character and intelligence for that civic duty.’ ” (Taylor v Louisiana, supra, p 528.)
The use of voter registration lists may have its imperfections and may indeed result in a mathematical disparity in the makeup of a jury but there is no duty upon the State to provide equal representation on a jury. Only if there is "direct evidence of exclusion of a particular racial group” or "evidence of a long-continued pattern of exclusion” (People v Horton, 18 NY2d 355, 360), may the defendant complain about the makeup of the jury. Moreover, he has the obligation of presenting evidence of the existence of "intentional and systematic discrimination” in the jury selection process (People v Chestnut, 26 NY2d 481, 488). The defendant has wholly failed to show any of this.
*207 I find the use of the voter registration list and the use of the income tax mailing list entirely proper for making up a pool of prospective jurors. No evidence has been presented from which an inference can be made that the county clerk has been less than assiduous in following the mandates of article 17 and in using fair and nondiscriminatory pursuits in creating a pool of jurors which "reflect the various distinctive groups in the population.”
Defendant’s insistence that the county clerk apply to the Immigration and Naturalization Service for their lists of Chinese and other Asians admitted to this county is too fatuous to require discussion. "The States remain free to confine the selection [of jurors] to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character.” (Carter v Jury Comm., 396 US 320, 332.)
Motion denied.